<u>**NOT FOR PUBLICATION**</u>

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY
## CAMDEN VICINAGE

| | |
|---|---|
| GORDON WAGNER,<br><br>Plaintiff,<br><br>v.<br><br>GUNTON CORPORATION, MARK MEAD, SOC COLOVAS, GEOFF GIEBEL, BRENDAN LENAHAN, NICK GAZONAS, individually and JANE AND JOHN DOES 1-10 and ABC CORPORATIONS 1-5,<br><br>Defendants. | HONORABLE KAREN M. WILLIAMS<br><br>Civil Action<br>No. 1:25-cv-11963-KMW-SAK<br><br>**OPINION** |

**Leah A. Vassallo, Esq.**
KENNEDY & VASSALLO
333 Dutch Mill Road
P.O. Box 77
Malaga, New Jersey 08328

*Counsel for Plaintiff*

**Jacqueline K. Gallagher, Esq.**
O'HAGAN MEYER PLLC
1717 Arch Street, Suite 3910
Philadelphia, Pennsylvania 19103

*Counsel for Defendants*

**WILLIAMS, District Judge:**

This matter comes before the Court on the Motion to Dismiss ("MTD") (Dkt. No. 3) filed by Defendants Gunton Corporation ("Gunton" or the "Corporate Defendant"), Mark Mead ("Mead"), Soc Colovas ("Colovas"), Geoff Giebel ("Geibel"), Brendan Lenahan ("Lenahan") and Nick Gazonas ("Gazonas") (collectively, the "Individual Defendants") (together "Defendants"). Plaintiff filed an Opposition to that Motion to Dismiss (Dkt. No. 8) to which Defendants further filed a reply (Dkt. No. 11.) The Court, having reviewed the Parties' submissions and considered the papers without oral argument pursuant to Federal Rules of Civil Procedure 78(b), **GRANTS in part** and **DENIES in part** Defendants' MTD.

## I.    INTRODUCTION

This is an employment dispute centered around post-termination commissions. Specifically, Plaintiff claims that he is entitled to certain commissions following the end of his employment with Gunton. In doing so, he has brought several claims geared towards the same objective—seeking payment of those commissions which were earned after the end of his employment with Gunton.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff began working for Gunton as an inside sales representative in 1999 and worked until 2002.[1] (Compl., ¶ 11, Dkt. No. 1.) Plaintiff returned in 2004 and worked as an outside sales representative from 2006 until he submitted notice of his voluntary resignation in September of 2020. (*Id.*) Plaintiff continued working at Gunton until October 4, 2020. (*Id.* at ¶ 12.)

During his employment with Gunton, Plaintiff executed multiple iterations of a written commission policy—first on January 17, 2001, then December 9, 2005, and finally in 2017. (Defs.' MTD Br. at 3-4, Dkt. No. 3-1; *see also* MTD Exhibit B, C, and D, Dkt. Nos. 3-4 to -6.) In relevant part, all iterations of the written commission policy included provisions expressly disclaiming payment of post-termination commissions. The 2017 version further specified that commissions were only to be paid on "invoices that are fully paid as of the termination date." (Defs.' MTD Ex. D – 2017 version.)

---

[1] Plaintiff filed his Opposition twice, once as Dkt. No. 8 and again at Dkt. No. 16 as a purported 'correction of docket 8.' The Court notes that the two versions of the opposition are identical and the only differences the Court can glean are the additions of a cover page, a page marking the included exhibit, and a signature on the declaration which is included as that exhibit. Ordinarily, such subsequent submissions, filed after the close of briefing and without leave of the opposing party or the Court, would not be considered. However, the Court recognizes that the defect was technical rather than substantive, and the subsequent submission at Dkt. No. 16 was a curative submission to add the signature to the declaration of Plaintiff included in the opposition. The Court considers the declaration, if at all, only for purposes of the personal jurisdiction analysis and does not rely on it in resolving the Rule 12(b)(6) motion.

On or about April 23, 2025, Wagner initiated the instant action in state court, filing the Complaint in the Superior Court of New Jersey Law Division Gloucester County. (*See* Notice of Removal, Dkt. No. 1.) Defendants removed the matter to this Court on June 19, 2025, and filed the instant Motion to Dismiss on June 26, 2025. (*Id.*)

## III.    LEGAL STANDARD

When a defendant files a motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing, by a preponderance of the evidence, sufficient facts to show that jurisdiction exists. *See Marten v. Godwin*, 499 F.3d 290, 295–96 (3d Cir. 2001); *Weber v. Jolly Hotels*, 977 F. Supp. 327, 331 (D.N.J. 1997). "[I]t is well established that in deciding a motion to dismiss for lack of [personal] jurisdiction, a court is required to accept the plaintiff's allegations as true and is to construe disputed facts in favor of the plaintiff." *Metcalfe v. Renaissance Marine, Inc.*, 566 F.3d 324, 330 (3d Cir. 2009) (citing *Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 457 (3d Cir. 2003)). "Once the defense has been raised, then the plaintiff must sustain its burden of proof in establishing jurisdictional facts through sworn affidavits or other competent evidence." *Time Share Vacation Club v. Atl. Resorts, Ltd.*, 735 F.2d 61, 66 (3d Cir. 1984). The plaintiff "need only establish a prima facie case of personal jurisdiction." *Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 97 (3d Cir. 2004). Nevertheless, "at no point may a plaintiff rely on the bare pleadings alone" to withstand a motion to dismiss for lack of personal jurisdiction—"[o]nce the motion is made, plaintiff must respond with actual proofs, not mere allegations." *Time Share Vacation Club*, 735 F.2d at 66.[2]

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a district court is required to accept as true all factual allegations in the pleading and draw all reasonable inferences from those

---

[2] "Courts may rely upon matters outside the pleadings to determine jurisdictional facts." *See DiSantis v. Allied Constr., LLC*, No. 17-11379, 2018 WL 3647210, at *3 (D.N.J. July 31, 2018).

allegations in the light most favorable to the non-movant, *see Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008), but need not accept as true legal conclusions couched as factual allegations. *Papasan v. Allain*, 478 U.S. 265, 286 (1986). To survive a motion to dismiss, a pleading must therefore contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic v. Twombly*, 550 U.S. 544, 570 (2007)) (internal quotation marks omitted).

## IV.    DISCUSSION

### A.    Individual Defendants – Personal Jurisdiction

"In order to determine whether personal jurisdiction exists over a non-resident defendant, . . . , the Court must determine whether jurisdiction lies under both the state long arm statute and the Due Process Clause of the Constitution." *Senju Pharmaceutical Co., Ltd. v. Metrics, Inc.*, 96 F. Supp. 3d 428, 435 (D.N.J. 2015). "In New Jersey, this inquiry is collapsed into a single step because the New Jersey long-arm statute permits the exercise of personal jurisdiction to the fullest limits of due process." *IMO Industries, Inc. v. Kiekert AG*, 155 F.3d 254, 259 (3d Cir. 1998). There are two different types of personal jurisdiction: "'general' (sometimes called 'all-purpose') jurisdiction and 'specific' (sometimes called 'case-linked') jurisdiction." *Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco County*, 582 U.S. 255, 262 (2017).

General jurisdiction is the broader of the two and permits claims against defendants which are not related to that defendant's contacts to the forum. *Senju*, 96 F.Supp. 3d at 435; *see also Daimler AG v. Bauman*, 571 U.S. 117, 136 (2014); *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011). "For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile[.]" *Daimler*, 571 U.S. at 137 (quoting *Goodyear*, 564 U.S. at 924). Here, it is undisputed that none of the Individual Defendants are domiciled or

4

reside in New Jersey.[3] Indeed, even Plaintiff, by only arguing for specific personal jurisdiction in his opposition motion to Defendants Motion to Dismiss, acknowledges that this Court lacks general personal jurisdiction over defendants. (Pl.'s Opp. Br. at 6-7.)

"In order for a state court to exercise specific jurisdiction, the suit must arise out of or relate to the defendant's contacts with the forum." *Bristol-Myers Squibb*, 582 U.S. at 262 (internal quotation marks omitted; emphasis removed). That is to say, there must be "an affiliation between the forum and the underlying controversy, principally, an activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation." *Id.* (quoting *Goodyear*, 564 U.S., at 919). "Physical presence within the forum is not required to establish personal jurisdiction over a nonresident defendant." *IMO Industries*, 155 F.3d 254, at 259 (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985)). "Instead, the plaintiff must show that the defendant has purposefully directed its activities toward the residents of the forum state, or otherwise purposefully availed itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws." *Id.* (internal citations and quotation marks omitted); *see also O'Connor v. Sandy Lane Hotel Co., Ltd.*, 496 F.3d 312, 317 (3d Cir. 2007) ("The inquiry as to whether specific jurisdiction exists has three parts. First, the defendant must have purposefully directed its activities at the forum. Second, the litigation must arise out of or relate to at least one of those activities. And third, if the prior two requirements are met, a court may consider whether the exercise of jurisdiction otherwise comports with fair play and substantial justice.") (internal citations and quotation marks omitted).

---

[3] Defendants Mead, Colovas, and Lenahan all live in Ohio (MTD Ex. A, Compl., ¶¶ 3-5), and Defendants Geibel and Gazonas both live in Pennsylvania, (*id.* at ¶¶ 6, 7).

Establishing specific jurisdiction over individual defendants requires more than merely alleging they are "agents or employees of organizations which presumably are amenable to jurisdiction in a particular forum." *MoneyGram Payment Systems, Inc. v. Consorcio Oriental, S.A.*, 65 Fed. App'x 844, 850 (3d Cir. 2003). Such allegations are the only support Plaintiff provides, arguing essentially that it is their affiliation with the Corporate Defendant, Gunton, which establishes the requisite jurisdiction over the Individual Defendants. (Compl., ¶¶ 3-7).

In *MoneyGram*, the Third Circuit affirmed the district court's dismissal, recognizing that the complaint failed to establish either general or specific general jurisdiction over the individual defendants. *MoneyGram*, 65 Fed. App'x at 850. Specifically, the Third Circuit noted that the only contact to the forum state was "in their capacity as corporate agents[,]" and that was not enough to establish the required jurisdiction. *Id.* Here, similarly, the sole contact Plaintiff alleges regarding each of the Individual Defendants is a product of that particular Defendant's involvement and association with the Corporate Defendant, Gunton. (Compl., ¶¶ 3-7.)

Plaintiff's opposition motion largely mirrors his Complaint in this regard, echoing claims that "[t]he Individual Defendants purposefully directed their activities at New Jersey through their roles as employes and officers of Gunton Corporation." (Pl.'s Opp. Br. at 7.) However, as discussed, this is not enough and is not the sort of contact that will afford a forum specific jurisdiction. Plaintiff's only other argument in support of jurisdiction is a public policy argument: that because the NJWPL defines "employer" to include "the officers of a corporation and any agents having the management of such corporation[,]" excluding the Individual Defendants on jurisdictional grounds would "create an unjust circumstance where, with all else equal, out-of-state officers or agents of businesses would be fully exempt from New Jersey regulations to which in-state officers would be subject." (*Id.*) However, such an argument does not change the baseline

6

considerations a Court must engage in when evaluating whether jurisdiction exists over a particular defendant. Indeed, this argument conflates substantive liability with the threshold constitutional inquiry of personal jurisdiction. The existence of potential liability under a state statute does not itself establish personal jurisdiction; rather, the defendant must have sufficient minimum contacts with the forum state. *See IMO Industries*, 155 F.3d at 259.

Finally, the Court notes Plaintiff's final argument that if the Individual Defendants are dismissed on jurisdictional grounds that "the matter be returned to state court," alleging generally that if they were, there would no longer be diversity jurisdiction. (Pl.'s Opp. Br. at 7.) The Court first notes that this request, embedded in opposition briefing, is procedurally improper and does not constitute a motion to remand. *See In re FMC Corporation Packaging Systems Div.*, 208 F.3d 445, 451 (3d. Cir. 2000) (citing 28 U.S.C. § 1447(c)). Further, even if such a request were appropriate, the Court notes that Plaintiff is mistaken. Dismissing the Individual Defendants leaves the Corporate Defendant, Gunton, which as alleged in Defendants' Notice of Removal, and undisputed by Plaintiff, is a citizen of the State of Ohio. Thus, with Plaintiff's status as a citizen of New Jersey, diversity is not affected by the dismissal of the Individual Defendants.

Accordingly, the Court finds that it does not have jurisdiction over the Individual Defendants and that Plaintiff's claims against them must be dismissed without prejudice.

### B.    Corporate Defendant – 12(b)(6)

Regarding the Corporate Defendant, Defendants have not moved to dismiss on jurisdictional grounds but instead argue that in all instances Plaintiff has failed to state a claim upon which relief can be granted. (Defs.' MTD Br. at 5-15, Dkt. No. 3-1.) The Court will address each claim in turn.

### i. New Jersey Wage Payment Law ("NJWPL") and New Jersey Wage and Hour Law ("NJWHL")

Defendants argue that Counts I and II, alleging violations of the NJWPL and NJWHL, must be dismissed because post-termination commissions are not recoverable under the NJWPL and, in any event, the governing commission policies expressly preclude payment of such commissions. (*See* Defs.' MTD Br. at 7-11.) The Court concludes that dismissal is not warranted at this stage.

The NJWPL requires that, upon termination of employment, an employer pay an employee all "wages due" no later than the regular payday for the pay period in which the termination occurred. N.J.S.A. § 34:11-4.3. The statute defines "wages" to include "direct monetary compensation for labor or services rendered by an employee," including compensation determined on a commission basis, while excluding certain supplementary incentives. N.J.S.A. § 34:11-4.1(c). Two related but distinct questions are implicated here: (1) whether commissions may qualify as "wages" under the NJWPL; and (2) whether commissions payable after termination are recoverable under the statute.

With respect to the first question, the New Jersey Supreme Court recently clarified in *Musker v. Suuchi, Inc.*, 260 N.J. 178 (2025), that commissions may constitute "wages" where they are tied to an employee's labor or services, as opposed to discretionary or supplementary incentives. *Id.* at 190–91. *Musker* emphasizes that this determination is fact-intensive and depends on the nature of the compensation structure and the employee's role. *See id.*

With respect to the second question, Defendants rely on *Neal v. Eastern Controls, Inc.*, No. A-4304-06T1, 2008 WL 706853 (N.J. Super. Ct. App. Div. Mar. 18, 2008), in which the Appellate Division held that the plaintiff did not have a statutory right to post-resignation commissions under the NJWPL. *Id.* at *7. In *Neal*, however, the commissions at issue had not vested prior to the plaintiff's resignation and remained contingent on future events, including the consummation of

8

sales that might never occur. *Id.* at \*6. The court's reasoning focused on whether those commissions were "wages due" at the time of termination. *See id.* at \*6-7.

Neither *Musker* nor *Neal* squarely resolves the circumstances presented here. *Musker* did not address post-termination commissions, and *Neal*, an unpublished decision, addressed commissions that were undisputedly contingent and unearned at the time of separation. Taken together, these authorities indicate that the dispositive issue is whether the commissions at issue were sufficiently earned prior to termination to qualify as "wages due." *See* N.J.S.A. § 34:11-4.3.

At the motion-to-dismiss stage, the Court must accept Plaintiff's factual allegations as true and draw all reasonable inferences in his favor. *See Phillips*, 515 F.3d at 231. Plaintiff alleges that he performed the work necessary to generate the commissions at issue prior to his resignation and that Defendants have withheld payment of those commissions despite receiving the benefit of that work. (*See, e.g.*, Compl., ¶¶ 15-16, 18-19, 28-31, 38-41.) Construed in the light most favorable to Plaintiff, those allegations plausibly support an inference that at least some of the commissions may have been earned prior to termination.[4]

Defendants point to written commission policies that purport to limit post-termination payments, including provisions tying commission payments to the receipt of customer payment or to the employee's status at the time of invoicing. (Defs.' MTD Br. at 1-2, 11.) Those provisions may ultimately bear on whether the commissions were earned or remained contingent at the time of Plaintiff's departure. However, the Court cannot, on the present record, determine as a matter of law whether those provisions define when commissions are "earned" or instead govern the

---

[4] Notably, *Neal* is procedurally distinguishable from the present matter because *Neal* was resolved on a motion for summary judgment on a fully developed factual record, not a motion to dismiss where, as here, the Court must accept as true Plaintiff's well-plead allegations. *See Phillips*, 515 F.3d at 231.

9

timing and conditions of payment. Nor can the Court resolve, at this stage, how those provisions operated in practice.

Thus, the Court cannot conclude, based solely on the pleadings and the materials properly considered at this stage, that the commissions at issue were unearned or categorically outside the scope of the NJWPL. The question whether Plaintiff's commissions were "wages due" turns on factual issues concerning the nature of the compensation structure and the point at which commissions vested, which are not appropriately resolved on a motion to dismiss. The Court's ruling is therefore limited. The Court does not hold that post-termination commissions are generally recoverable under the NJWPL, nor does it determine that Plaintiff is entitled to the commissions he seeks. Rather, the Court concludes only that Plaintiff has plausibly alleged a claim for unpaid wages sufficient to proceed beyond the pleading stage.

Accordingly, Defendants' Motion to Dismiss Counts I and II is **DENIED**. Because Plaintiff's NJWHL claim is premised on the same alleged unpaid commissions, it likewise survives at this stage. *See Hargrove v. Sleepy's, LLC*, 220 N.J. 289, 303 (2015).

### ii.  Breach of Contract

Plaintiff alleges that Defendant Gunton breached the terms of his compensation agreement by failing to remit commissions following his resignation. To state a claim for breach of contract under New Jersey law, a plaintiff must allege: (1) the existence of a contract; (2) a breach of that contract; (3) resulting damages; and (4) that the plaintiff performed his own contractual obligations. *Frederico v. Home Depot*, 507 F.3d 188, 203 (3d Cir. 2007). Defendants argue that Plaintiff cannot establish a breach because the applicable commission policies expressly limit or preclude payment of commissions after termination. In response, Plaintiff disputes which version of the commission policy governs and challenges the enforceability of certain provisions.

At this stage, the Court cannot definitively resolve which version of the parties' agreement controls or how its terms should be interpreted. However, Plaintiff's breach of contract claim, as currently pleaded, is insufficient. The Complaint does not identify with specificity the contractual provision allegedly breached, nor does it clearly allege how Defendants' conduct violated a particular obligation under the governing agreement. Instead, Plaintiff relies on generalized assertions that he is owed commissions, without tethering that claim to specific contractual language. Moreover, Plaintiff's allegations reflect uncertainty as to which agreement governs and what terms apply, further underscoring the lack of clarity in the pleadings. While such disputes may ultimately be resolved through discovery, a plaintiff must, at minimum, allege the existence of a contract and the specific basis for its breach.

Accordingly, Plaintiff has not plausibly alleged a breach of contract claim at this time. Count III will therefore be dismissed without prejudice, and Plaintiff may amend to identify the operative agreement and the specific contractual provisions allegedly breached.[5]

### iii.   Tortious Interference with Contractual Relations

To establish a claim for tortious interference with contractual relations, "a plaintiff must prove: (1) actual interference with a contract; (2) that the interference was inflicted intentionally by a defendant who is not a party to the contract; (3) that the interference was without justification; and (4) that the interference caused damage." *214 Corp. v. Casino Reinvestment Development Authority*, 280 N.J. Super. 624, 628 (Law Div. 1994) (citing *Printing Mart-Morristown v. Sharp Electronics Corp.*, 116 N.J. 738, 751-52 (1989)). "A tortious interference with contract claim can be waged only against a third-party who is not a party to the contractual or economic relationship

---

[5] Importantly, the Court's conclusion here does not resolve the separate question of when commissions are "earned" for purposes of the NJWPL. As discussed above, that inquiry is fact-intensive and not appropriately decided on a motion to dismiss.

at issue." *Silvestre v. Bell Atlantic Corp.*, 973 F.Supp. 475, 486 (D.N.J. 1997), *aff'd,* 156 F.3d 1225 (3d Cir. 1998) (citing *Pitak v. Bell Atlantic Network Services, Inc.,* 928 F.Supp. 1354, 1369 (D.N.J. 1996); *Printing Mart-Morristown v. Sharp Elecs. Corp.,* 116 N.J. 739, 752 (1989)).

Here, Defendants argue, correctly, that Gunton cannot be "held liable for interfering with its own Termination Commission Policy." (Defs.' MTD Br. at 13.) In response, Plaintiff clarifies "that the Individual Defendants are not parties to any contract between Plaintiff and Defendant Gunton Corporation." (Pl.'s Opp. Br. at 4-5.) However, "[a]n employee working for the corporation with which plaintiff allegedly had a contract cannot serve as the third-party necessary for the tripartite relationship, unless the employee acted outside the scope of his employment." *Golden State Medical Supply Inc. v. AustarPharma LLC,* No. 21-17137, 2022 WL 2358423, at *12 (D.N.J. June 30, 2022) (quoting *Ross v. Celtron Int'l, Inc.,* 494 F.Supp.2d 288, 305 (D.N.J. 2007)). The Court need not determine whether or not Plaintiff has sufficiently pled that the Individual Defendants tortiously interfered with his contractual relations by acting out of the scope of their employment because, as discussed, *supra* IV.A, the Court does not have specific personal jurisdiction over the Individual Defendants and they have been dismissed. Accordingly, the Court will dismiss Plaintiff's tortious interference with contractual relations claim with prejudice.

### iv.  Unjust Enrichment, Quantum Meruit, Quasi Contract

Under New Jersey Law, to prove a claim for unjust enrichment, "a party must demonstrate that the opposing party 'received a benefit and that retention of that benefit without payment would be unjust.'" *Thieme v. Aucoin-Thieme,* 227 N.J. 269, 288 (2016) (quoting *Iliadis v. Wal-Mart Stores, Inc.,* 191 N.J. 88, 110 (2007)). "This doctrine of quasi-contract also requires that plaintiff show that it expected remuneration from the defendant at the time it performed or conferred a benefit on defendant and that the failure of remuneration enriched defendant beyond its contractual

rights." *China Falcon Flying Limited v. Dassault Falcon Jet Corp.*, 329 F.Supp. 3d 56, 77 (D.N.J. 2018) (citing *Thieme,* 227 N.J. at 288). "Recovery for unjust enrichment, however, is an equitable remedy that is only available when there is no express contract providing for remuneration." *American Rubber & Metal Hose Co., Inc. v. Strahman Valves, Inc.,* No. 11-1279, 2011 WL 3022243, at *8 (D.N.J. Jul. 22, 2011) (citing *Caputo v. Nice-Pak Prods.,* 300 N.J. Super. 498, 507 (N.J. App. Div. 1997)).

"To recover under a theory of quantum meruit, a plaintiff must establish (1) the performance of services in good faith; (2) the acceptance of the services by the entity to which they were rendered; (3) an expectation of compensation therefor; and (4) the reasonable value of the services." *China Falcon,* 329 F.Supp. 3d at 76 (citing *Coldwell Banker Commercial/Fiest & Feist Realty Corp. v. Blancke P.W. L.L.C.,* 368 N.J. Super. 382, 401 (App. Div. 2004)). However, as is the case with regard to theories of unjust enrichment or quasi contract, "[i]t has long been recognized that the existence of an express contract excludes the awarding of the relief regarding the same subject matter based on quantum meruit." *Id.* (quoting *Kas Oriental Rugs, Inc. v. Ellman,* 394 N.J. Super. 278, 286 (App. Div. 2007)). Thus, the Court finds that under any of the three related quasi contract theories Plaintiff pleads in Count Five of the Complaint, the existence of the contract and related pleadings regarding the breach of contract claim, bars recovery under these alternative theories.

Moreover, the Defendants argue that Plaintiff's pleadings on this claim are not sufficiently specific as to meet the pleading requirements under *Iqbal* and *Twombly.* (Defs.' MTD Br. at 13-14.) The Court agrees. Indeed, in Count Five the only unique averment plaintiff makes is a bare recitation of the claim, stating "By and through its actions, Defendant has been unjustly enriched

13

to the detriment of plaintiff."[6] (MTD Ex. A., Compl., ¶¶ 66-67.) That is the quintessential "unadorned, the-defendant-unlawfully-harmed-me accusation[]" that the Supreme Court sought to avoid when elucidating the appropriate pleading standard in *Iqbal.* 556 U.S. at 678. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

Here, nothing in the Complaint comes close to the factual content required for the court to make a reasonable inference that defendant is liable for the alleged unjust enrichment, quantum meruit, or quasi contract. In his opposition, Plaintiff attempts, to no avail, to point to paragraphs from other sections of the Complaint which provide the missing details of his quasi-contract claims, arguing that the provision noting "[a]ll earlier facts were incorporated by reference into the claim for Unjust Enrichment/Quasi Contract. (Pl.'s Opp. Br. at 5.) To begin with, the requirement that a plaintiff had the expectation for remuneration at the time it conferred the benefit renders Plaintiff's reliance on statements in the Complaint from after his resignation had taken effect, misplaced. *See China Falcon*, 329 F.Supp. 3d at 77. Similarly, Plaintiff's reliance on statements reiterating his allegation that he is "owed substantial sums in commissions that Defendants have unlawfully diverted from him to enrich itself," provides none of the missing detail either. The only remaining statement Plaintiff points to in Paragraph 32 of his Complaint fares no better. Specifically, that statement does not include the requisite detail to substantiate the claims here. Plaintiff does not indicate who told him he would be paid, when he would be paid, or even that that referenced payment was the same commissions alleged as due. (*See* Pl.'s Opp. Br. at 5; *see*

---

[6] The Court acknowledges a typographical error in Plaintiff's Complaint regarding paragraph numbers. Count Five begins at paragraph 10, as noted in the Complaint, but the Court notes that it is a continuation from where the prior count left off at paragraph 65.

*generally* Compl.) Thus, the Court agrees with Defendants that Plaintiff's Count Five is insufficiently pleaded and must be dismissed for that reason as well.

## V.    CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss is **GRANTED in part** and **DENIED in part**. All claims against the Individual Defendants are dismissed without prejudice for lack of personal jurisdiction. Defendants' Motion to Dismiss Counts I and II, alleging violations of the NJWPL and the NJWHL, is **DENIED**. Plaintiff's claims for Breach of Contract (Count III) and Unjust Enrichment, Quantum Meruit, or Quasi Contract (Count V) are dismissed without prejudice. Plaintiff's claim for Tortious Interference with Contractual Relations (Count IV) is dismissed with prejudice as to the Corporate Defendant.[7]

Dated:   April 9, 2024

KAREN M. WILLIAMS
U.S. DISTRICT COURT JUDGE

---

[7] The Court may deny leave to amend where any amendment would be futile. *Phillips v. County of Allegheny*, 515 F.3d 224, 245 (3d Cir. 2008) (determining that a dismissal without leave to amend is justified where the amendment would be futile); *see also, e.g., Kovalev v. Stepansky*, 835 F.App'x 678, 680 & n.2 (3d Cir. 2020) (modifying district court's order dismissing claims with prejudice for lack of subject matter jurisdiction to a dismissal *without* prejudice and *without* leave to amend.). Plaintiff's claim for Tortious Interference with Contractual Relations fails as a matter of law because that claim requires the interference be done by a third-party not already a party to the contract. Thus, because the Corporate Defendant was party to the contract, the Court finds that further amendment of this claim would be futile and dismisses it with prejudice as against the Corporate Defendant. Because the Court has dismissed all claims against Individual Defendants without prejudice for lack of personal jurisdiction, it does not reach the merits of the Rule 12(b)(6) motion with respect to the Individual Defendants.

15